**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CASEY SPRACKLIN; SHERRY
SPRACKLIN,

        Plaintiffs‑Appellants,

v.

CITY OF BLACKWELL,

        Defendant‑Appellee.

No. 07-6287
(D.C. No. 5:07-CV-00023-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

Casey and Sherry Spracklin appeal the district court's grant of summary

judgment to the City of Blackwell ("City") on their due process and equal

protection claims arising from the City's termination of electrical services to a

building they own. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm for

substantially the same reasons stated in the district court's decision.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Background

The parties are familiar with the facts and allegations, so we provide only a brief summary, viewing the facts in the light most favorable to plaintiffs. The Spracklins own a one-hundred-year-old commercial building on Main Street in Blackwell, Oklahoma, that was once a car dealership. Mr. Spracklin (hereafter, "Spracklin"[1]) uses the building for his pest-control business and, for a time, stored a number of cars there in various states of restoration. He claims that for a long time, perhaps as early as 1994, the City has been trying to declare the building dilapidated and condemn it. Among other things, he alleges that the City has enacted ordinances directed at him, frequently harassed him about the building's condition, and improperly cited automobiles he parks near it. He also claims to have witnessed a City police officer and an assistant fire chief breaking windows in the building in 2002.

On July 4, 2005, high winds struck the City and damaged Spracklin's building, breaking windows, ripping off exterior bricks, and destroying a wooden carport on the roof. There was also a significant sewage backup in the basement apparently related to the storm. After conducting exterior inspections on August 2 and 4, the City sent Spracklin two notices on August 8, one from Sara-Beth Gregson, then the City's assistant code enforcement officer, and one

_____

[1]    Although plaintiffs Casey and Sherry Spracklin are co-owners of the building, the parties refer to them as "Spracklin" or "he," a convenience we adopt for the remainder of this order and judgment.

from James Inmon, in his capacity as the City's fire marshal. Gregson's notice identified a variety of property- and zoning-code violations, including fire-code violations, and requested Spracklin to submit a remediation plan within ten days. Inmon's letter also noted ordinance violations, especially violations of the fire code, and requested an interior inspection within fifteen days to confirm whether or not the building was up to code. Inmon informed Spracklin that he could be present and have anyone else there, that the City would work with Spracklin to find a third-party inspector, and that the City would split the cost of the inspection with him. By note dated August 18, Spracklin informed the City that he was denying all alleged violations until he and his attorneys had enough time to have a professional evaluation.

The parties scheduled the interior inspection four times in September. Spracklin's attorney had a conflict with an inspection scheduled for the 7th, and the City cancelled one set for the 8th because its third-party inspectors were unavailable. On September 15, Spracklin cancelled an inspection that had been set for the 22nd because he had to leave town for an MRI, but he indicated he would be available the entire next week. Accordingly, on September 16, the City noticed an inspection for the 29th, a date to which Spracklin's attorney had agreed. Spracklin did not confirm his availability on that date, as requested, instead waiting until the 27th to inform the City that he would be "busy w[ith] his business" and therefore unavailable. Aplt. App., Vol. I, at 106.

Later on September 27, Spracklin delivered a note to Gregson, dated September 28, stating that he would be available for an inspection on or after October 6. Gregson contacted the City's attorney, Mary Ann Karns, who said to issue citations and turn off the electricity no later than October 3. On that date, the City cut off the power, and Gregson sent a letter to Spracklin informing him that despite his request to reschedule on October 6, the City was cutting off the power because the violations observed during the exterior inspections were "very serious." *Id.* at 113. In a separate letter also dated October 3, the City ordered Spracklin to appear in municipal court to answer the charges on enclosed citations. On October 5, the City sent him a letter noticing an inspection on October 20, but it does not appear that the City ever inspected the building on that or any other date. Evidently, the building remains without power.

<u>The District Court's Decision</u>

Spracklin filed this action in the District Court of Kay County, Oklahoma, and the City removed it to federal court. In his complaint, Spracklin relied on 42 U.S.C. § 1983 in asserting that the termination of the electrical service violated his procedural and substantive due process rights, as well as his equal protection rights, under the Fourteenth Amendment to the Constitution. He also advanced state-law claims against the City. The district court granted the City's motion for summary judgment on his § 1983 claims and declined to exercise supplemental jurisdiction over the state-law claims.

For his procedural due process claim, Spracklin relied on *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), in which the Supreme Court held that a utility provider contemplating termination of residential electrical service for nonpayment must give notice to the customer that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an *opportunity* to present their objections." *Id.* at 13 (emphasis added). The notice must "apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Id.* at 14. Notice "does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." *Id.* at 14-15. "The *opportunity* for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances." *Id.* at 16 n.17 (emphasis added). Spracklin contended that the City did not comport with the *Memphis Light* standards because it did not give him an adequate opportunity to contest the alleged code violations.

The district court questioned whether *Memphis Light* applies when possible code violations implicate public safety, but concluded that even if it does, the City's notice was procedurally adequate. The court reasoned that the August 8 letter from Fire Marshal Inmon advised Spracklin "of the availability of a

-5-

procedure for protesting the [C]ity's proposed termination of electrical services," that the City "would schedule and conduct an on-site investigation within the next 15 days, and that the owners could be present for that inspection." Aplt. App., Vol. II, at 515. In view of the fact that Spracklin initially refused to allow an inspection and thereafter cancelled several scheduled inspections, the court considered it immaterial that the City refused his offer to conduct the interior inspection on or after October 6. In the court's view, the City had given Spracklin several opportunities to permit the inspection but he had not taken advantage of the opportunity, and this was sufficient to satisfy the procedural requirements of *Memphis Light*.

As for his substantive due process claim, the district court first assumed, without deciding, that substantive due process rights attach when electrical service is discontinued out of concern about fire code violations. *Id.* at 518 (noting that other courts, for example, *Ransom v. Marrazzo*, 848 F.2d 398, 412 (3d Cir. 1988), have held that a municipality's provision of water and sewer services does not necessarily implicate substantive due process protections). The court then proceeded to determine whether the City's action was arbitrary, shocking to the conscience, and deliberate. *See* Aplt. App., Vol. II, at 518 (citing *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999)). The court considered it undisputed that the City's exterior inspections had identified at least some problems with the structure; photographs in evidence clearly showed

"stalactites hanging from the ceilings (as viewed through the windows), missing mortar, and gaps in the brick facade." Aplt. App., Vol. II, at 519. Also undisputed was the City's observation of water leaks in 2004. Finally, the court determined that Spracklin had admitted the existence of several problems, including fallen bricks, the destroyed carport, a roof that was "not significantly cracked," and a sewage backup, which may or may not have been the City's fault. *Id.* Under these circumstances, the court concluded that Spracklin failed to present a genuine issue of material fact as to whether or not the City's actions were arbitrary or shocked the conscience.

Finally, regarding the equal protection claim, the district court considered whether Spracklin, as a class of one, had identified any disputed material facts on the elements of this claim: (1) that the City's conduct was a spiteful effort to "get him, for reasons wholly unrelated to any legitimate state objective"; and (2) that the City treated him differently than any other similarly situated building owners and that there was no rational basis for the treatment. *See id.* at 520 (citing *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001)). The court concluded that Spracklin had not met his burden on summary judgment. The court determined that there was undisputed evidence of at least some problems with the building and of steps the City had taken to enforce code requirements with other building owners. The court considered photographs of other buildings on which Spracklin had written notes in the margin concerning whether or not the

City had inspected them, taken steps to enforce possible code violations, or turned off the power to be inadequate to meet his burden on summary judgment because he did not establish that his comments were based on first-hand knowledge. The court also ruled that Spracklin had made no showing that the City lacked a rational basis for turning off the electricity.

Discussion

We review the district court's grant of summary judgment de novo, using the same legal standard applicable in the district court. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, we view the evidence, and draw all reasonable inferences from it, in the light most favorable to the nonmoving party. *Baca*, 398 F.3d at 1216.

Having reviewed the record, the parties' arguments, and the relevant law, we affirm the district court's decision for substantially the same reasons stated by the district court. Spracklin has identified no disputed facts that are material to his procedural due process claim. The City's August 8 notice comported with *Memphis Light* because it provided Spracklin with notice of the action the City intended to take and afforded him an adequate opportunity to oppose the action; an actual hearing was not required, so the City's refusal to await another possible

opportunity to inspect after Spracklin cancelled the September 29th date is immaterial. *See Memphis Light*, 436 U.S. at 13-16.

As to his substantive due process claim, Spracklin has identified no admissible evidence that creates a genuine issue of material fact concerning whether the City's conduct shocked the conscience. *See Clark*, 168 F.3d at 1190; *see also Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir. 2001) (explaining that abuse or misuse of governmental power "must demonstrate a degree of outrageousness" in order to be considered conscience-shocking) (quotation omitted). There is nothing conscience-shocking or "outrageous" about the conduct of a municipality that gives proper notice of suspected safety issues in a commercial building, attempts to ascertain whether the building is up to code or poses a safety or fire hazard, and, when hindered by the owner in its effort to obtain additional information expeditiously, disconnects the power.

Finally, for substantially the same reasons the district court gave, we agree that Spracklin identified no admissible evidence showing that he was treated differently than any other similarly situated building owners. As this is a sufficient basis for granting summary judgment on Spracklin's equal protection claim, we need not consider whether the City's conduct was a spiteful effort to

"get [him] for reasons wholly unrelated to any legitimate state objective."

*See Bartell*, 263 F.3d at 1149 (quotations omitted).

The judgment of the district court is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge