FILED
United States Court of Appeals
Tenth Circuit

April 19, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ROCKY MOUNTAIN ROGUES, INC., doing business as BULL MOOSE SALOON, JAMES BLITTERSDORF, and JULINE CHRISTOFFERSON,

   Plaintiffs-Appellants,

v.

TOWN OF ALPINE, DAVID LLOYD, individually and in his official capacity as Mayor, ALPINE TOWN COUNCIL, and Town Council members, individually an din their official capacities, DONALD R. HUTCHINSON, KATHY SWISTON, and STEVE FUSCO, JAMES PHILLIPS, individually and in his official capacity as Chief of Police, TRACY MATHEWS, individually and in her official capacity as Town Clerk, ALPINE PLANNING AND ZONING BOARD/COMMISSION, JOE SENDER, individually and in his official capacity, STATE OF WYOMING, WYOMING FIRE PREVENTION AND ELECTRICAL SAFETY, WYOMING STATE FIRE MARSHAL JIM NARVA, individually and in his official capacity,

   Defendants-Appellees.

No. 08-8087

(D. of Wyo.)

(D.C. No. 2:06-CV-00294-CAB)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **EBEL**, and **GORSUCH**, Circuit Judges.

Rocky Mountain Rogues, Inc., doing business as Bull Moose Saloon, and its principals (together, the Bull Moose), brought a 42 U.S.C. § 1983 suit against the Town of Alpine and a number of its officials involved in a dispute over its liquor license and the issuance of a building permit to expand its business. The Bull Moose claimed the Alpine Defendants violated its rights by (1) depriving it of due process in revoking a previously granted conditional building permit, (2) interfering with its pursuit of property during liquor license renewal proceedings, (3) subjecting it to unequal treatment, (4) retaliating against it for exercising its freedom of expression because the saloon offered exotic entertainment, and (5) conspiring against it generally in the course of the other constitutional violations. The Bull Moose also claimed, under § 1983, that the Wyoming State Fire Marshal deprived it of substantive due process by closing the saloon for fire code violations.

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Alpine Defendants and Fire Marshal moved for summary judgment and the district court granted their motions. The Bull Moose appeals those rulings.

We AFFIRM on substantially the same grounds as the district court ruled. The Bull Moose received the due process it was entitled to during the building permit and licensing dispute and none of the other claims raise disputed material facts to survive summary judgment.

## I. Background

The Bull Moose is a restaurant and bar located in Alpine, Wyoming. Broadly speaking, the Bull Moose alleges that its presentation of exotic entertainment led the Defendants to behave antagonistically towards the Bull Moose. More specifically, the Bull Moose's claims against the Alpine Defendants relate to the revocation of a permit the Bull Moose needed to build a motel on its premises and the delayed renewal of its liquor license, and its claim against Fire Marshal Narva concerns an order he issued closing the Bull Moose for fire safety reasons. The facts relevant to this appeal thus may be categorized as pertaining to (1) the building permit for the motel, (2) the liquor license's renewal, and (3) the State Fire Marshal's cease and desist order.

A. Building Permit

In April 2004, the Bull Moose applied for a permit to build a motel on its premises. The Alpine Town Council approved the Bull Moose's application on May 18, 2004, subject to several conditions: (1) the project receive the State Fire

Marshal's approval; (2) its electrical plans obtain State approval; (3) the project gain the approval of Alpine's setback inspector; (4) the project receive the approval of Alpine's building inspector after obtaining the State Fire Marshal's approval; and (5) the Bull Moose pay Alpine the appropriate water connection fee. The Council approved the application conditionally so the permitting process would not interfere with the arrangements the Bull Moose had entered into to finance the building of the motel.

The building permit certificate did not refer to the conditions on its face, but they were stated at the meeting at which the Council approved the Bull Moose's application and in a letter, dated May 19, 2004, from Alpine's mayor to the Bull Moose. Alpine's Zoning Ordinance states that "the approval of a [] permit may include conditions, provided the conditions are transferred in writing to the applicant with the signed permit." Aple. Supp. App. at 3.

On May 28, 2004, a day after receiving approval from the State Fire Marshal, the Bull Moose began construction on the motel. Several weeks later at the June 15, 2004 Council meeting, the setback inspector told the Council that he had not yet approved the Bull Moose's plans for the motel and that he had concerns about parking at the site. At that meeting, one Council member also noted the Council had not yet received electrical plans for the motel or confirmation of the State Fire Marshal's approval. Because of these deficiencies, the Council revoked the Bull Moose's building permit at the June 15 meeting.

-4-

The Bull Moose was informed of the permit's revocation the following day. Subsequently, the Bull Moose paid the required water connection fee.

On July 6, 2004, the Council again considered the Bull Moose's building permit. It concluded there were still issues concerning parking at the site and refused to reinstate the permit. At the September 7, 2004 Council meeting, after the Bull Moose agreed to eliminate a certain number of parking spaces, the Council renewed the permit. The Bull Moose was issued a new building permit certificate on September 9, 2004.

B. Liquor License

On November 2, 2004, in response to citizens' concerns about exotic dance shows held at the Bull Moose, the Council put off renewing the Bull Moose's liquor license so that further review could be conducted. Following additional review, the Council, on November 30, 2004, renewed the license.

Based on a series of alleged license violations, the Council authorized the filing of a complaint in state court seeking to revoke the Bull Moose's liquor license in July 2005. That suit was eventually dismissed.

In November 2005, essentially for the same reasons that led it to defer renewal in 2004, the Council again delayed renewing the Bull Moose's liquor license. The Council ultimately renewed the license, subject to the Bull Moose's compliance with the State Fire Marshal's requirements, restrictions on minors, reasonable law enforcement requests for access, and Wyoming provisions

governing decency and liquor license maintenance. At one of the Council meetings where renewal of the Bull Moose's license was discussed, the Bull Moose agreed to limitations on what its exotic dancers could wear during performances.

While renewal of the Bull Moose's liquor license was delayed in 2004 and 2005, the license never lapsed and was never revoked. The Bull Moose was never without a valid liquor license.

C. Cease and Desist Order

The Bull Moose received approval of its plans for an addition to its main building from the State Fire Marshal's Office on April 16, 2003. According to those plans, sprinklers were only to be installed in the addition.

On March 12, 2004, a building plan reviewer for the State Fire Marshal's Office informed the Bull Moose that sprinklers needed to be installed in both the addition and the main building. In August 2004, a deputy fire marshal authorized occupation of the first floor of the main building, but also told the Bull Moose that sprinklers still needed to be installed in the main building. Thereafter, an assistant fire marshal wrote a letter to the Bull Moose, dated April 28, 2005, stating that it had to install sprinklers in the main building by May 25, 2005.

The Bull Moose negotiated an extension for installing sprinklers with the State Fire Marshal's Office. Later, however, the Bull Moose determined that it could not afford to install sprinklers in the main building.

-6-

On September 1, 2005, Fire Marshal Narva, after consulting with the legal representative for the State Fire Marshal's Office, served an order on the Bull Moose, stating that it could not be occupied or operated. The Bull Moose was forced to close as a result.

A state court preliminarily enjoined enforcement of Fire Marshal Narva's cease and desist order on September 22, 2005. The Bull Moose pursued its administrative remedies and, eventually, challenged the order in state court. The state court reversed Fire Marshal Narva's order in December 2006, finding that the Fire Marshal did not have the statutory authority to issue the order.

## II. Discussion

The Bull Moose brought several claims relating to the series of events involving their construction travails and liquor licensing issues. The district court granted summary judgment to the defendants on all claims.

We review a district court's decision to grant summary judgement "de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The court views the evidence and draws reasonable inferences in the light most favorable to the non-moving party. *See id.* Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c).  "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal quotation marks omitted).

The non-moving party must set forth specific facts showing a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder reasonably could find for the plaintiff.  *See id.*  "In a response to a motion for summary judgment, a party cannot rest on ignorance of [the] facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Moreover, we may consider only admissible evidence when ruling on a motion for summary judgment.  *See World of Sleep, Inc. v. La-Z-Boy Chair, Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

With this background, we consider each of the Bull Moose's constitutional claims.

A. Due Process Claim Relating to Revocation of the Building Permit

The Bull Moose argues the Alpine Defendants violated its right to due process by approving and then revoking the building permit for its expanded place of business.

"The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To succeed on a deprivation of procedural due process claim, an individual must show: (1) he possessed a protected interest to which due process protections were applicable; and (2) he was not afforded an appropriate level of process. *See Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1256 (10th Cir. 2008). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A property interest includes a legitimate claim of entitlement to some benefit created and defined by existing rules or understandings that stem from an independent source such as state law." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003). In determining what process is due, we consider: (1) the private interest the official action will affect; (2) the risk of depriving that interest erroneously through the procedures used, and the value, if any, of further

safeguards; and (3) the burden on the government additional procedures would entail.  *See Mathews*, 424 U.S. at 335.

Under Wyoming law, a landowner who obtains a building permit and, in reliance on that permit, makes a substantial expenditure, or otherwise commits himself to his substantial disadvantage, holds a vested right protecting him against future zoning changes.  *See Ebzery v. City of Sheridan*, 982 P.2d 1251, 1256 (Wyo. 1999).  "It has been recognized, however, that a property owner must act in good faith to acquire vested rights in a [permit], and the reliance on the [permit] must be reasonable."  *Id.* at 1257.

The Bull Moose alleges the way in which the Alpine Defendants revoked the building permit for the motel violated its right to procedural due process.  The parties dispute whether the Bull Moose possesses an interest to which due process protections apply—they contest whether the Council's issuance of the conditional permit and the Bull Moose's subsequent expenditures created a cognizable interest in the permit.[1]  We need not resolve that question to find that the Alpine

[1]  Based on its reading of Wyoming law, the district court found that the Bull Moose did not acquire a protectable property interest in the building permit, because the Bull Moose did not make expenditures in reliance on the permit in good faith.  The district court concluded the Bull Moose did not act in good faith because it did not satisfy the conditions to which the permit was subject before beginning construction.  While not dispositive of the claim here, we note that the Supreme Court of Wyoming has ruled that actions taken in reliance on a permit while the time for appeal is pending are inherently unreasonable—in such circumstances, a permit holder's expenditures are considered "calculated risk,"

(continued...)

-10-

Defendants are entitled to summary judgment on the Bull Moose's procedural due process claim, however, because the record is clear that the Bull Moose received adequate process.[2]

An examination of the undisputed facts leads us to conclude that the Bull Moose was provided an appropriate level of process under the applicable law. As the letter notifying the Bull Moose of the Council's revocation decision indicated, the Bull Moose could seek review from the Council or supply information demonstrating satisfaction of the permit's conditions to the Town of Alpine. Ultimately, based on its review at subsequent meetings, and the Bull Moose's presentation of its circumstances and compliance with the building permit's conditions, the Council renewed the permit.

The post-deprivation process afforded the Bull Moose sufficiently protected its interest in the building permit. *First*, assuming for our discussion that the Bull Moose had a cognizable interest in the building permit, we acknowledge the permit's continued revocation would have affected that interest. Not

---

[1](...continued)
not protected activity. *See Ebzery*, 982 P.2d at 1257.

[2] The district court granted the Alpine Defendants summary judgment on the Bull Moose's procedural due process claim based on its determination that the Bull Moose did not have a cognizable interest in the conditional building permit. Because we conclude alternate grounds exist to affirm the district court's ruling on the procedural due process claim, we need not pass upon its property-interest analysis. *See Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1275 (10th Cir. 2008) ("We may affirm the district court's decision for any reason supported by the record.").

insignificantly, the longer the building permit remained revoked, the longer the motel's construction would be delayed.

*Second*, the procedures the Council employed entailed little risk of erroneously depriving the Bull Moose of its interest in the building permit. The Council revoked the permit at its June 15, 2004 meeting when it was informed that the setback inspector had not yet approved the Bull Moose's plans and that the State Fire Marshal's approval had not been confirmed. Approval by the setback inspector and the State Fire Marshal were conditions upon which the permit had been issued. The Bull Moose, represented by counsel, sought review of the building permit's revocation at the July 6, 2004 Council meeting. There, continued concerns about parking and setbacks prevented the Council from reinstating the permit. Eventually, at the September 7, 2004 meeting, the Council decided to renew the building permit, after the Bull Moose agreed to certain concessions regarding parking. The Council thus renewed the permit once the Bull Moose fulfilled the condition requiring it to receive the setback inspector's approval. The record therefore shows that little risk of erroneous deprivation accompanied the process the Council used. The Council's procedures, which included addressing the same issue at multiple meetings, allowed the Bull Moose and its representatives to participate adequately in the process and correct any misapprehensions.

-12-

*Finally*, while we acknowledge that requiring additional procedures, such as holding Council meetings on a more frequent basis or placing review of the Bull Moose's permit on the agenda at Council meetings, could have offered increased protection, we also recognize that requiring further process where, as here, it is unlikely to have an impact on decision-making could further complicate the building process and interfere with municipal governance. *See Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) (directing consideration of an additional procedure's fiscal and administrative burden).

In this case, the minute risk of erroneous deprivation and the minimal value of additional procedures overcomes our other considerations. Nothing indicates that additional process would have brought about a different outcome.

The Bull Moose did not specifically argue in its brief to this court that it should have been provided additional pre-deprivation process. *See Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (describing "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest") (internal quotation marks omitted)). Even if the Bull Moose had, we would not reach a different result. We accept that the holder of a building permit has an interest in the permit's continued effect and in proceeding with construction without delay. At the same time, however, we recognize that a municipality has an interest in maintaining its ability to act quickly to bring a halt

-13-

to construction work that poses a threat to the public or the environment. *See*

*Connecticut LLC v. Dist. of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003)

(finding that a stop-work order that prohibited continued building was valid in

light of the availability of expedited post-deprivation review); *cf. Dixon v. Love*,

431 U.S. 105, 114 (holding that a driver's license could be suspended before a

hearing where the driver had a poor driving record and post-deprivation review

was available). Given the necessity of balancing those competing interests, we

conclude that the post-deprivation procedures available to the Bull Moose

supplied sufficient process.

Moreover, the totality of the circumstances here indicate that the Bull

Moose knew before its permit was revoked that revocation was a possibility. The

Council issued the building permit to the Bull Moose based on the premise that

the Bull Moose would fulfill the conditions to which the permit was subject. The

Bull Moose had the opportunity to discuss the status of its compliance with those

conditions with Town officials, and provide information confirming its

satisfaction of those conditions to Town officials, in advance of the permit's

revocation. The Bull Moose's building permit was not revoked for reasons the

Bull Moose was unaware of or without having an opportunity to share its

perspective with the Town. *See West v. Grand County*, 967 F.2d 362, 368 (10th

Cir. 1992) (holding that constitutional mandates were satisfied where the totality

of the circumstances indicated the plaintiff had advance knowledge of her

-14-

possible termination and had several pre-termination opportunities to discuss her potential termination); *cf. Spracklin v. City of Blackwell*, 293 F. App'x 567, 570–71 (10th Cir. 2008) (acknowledging that adequate process may be afforded, absent an actual pre-deprivation hearing, where a city terminates electrical services after apprising a resident of the reasons for its action and providing an opportunity for informal consultation with city personnel empowered to correct a mistaken determination) (relying on *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978)).

Because the record demonstrates the Bull Moose was afforded adequate process, it cannot succeed on its procedural due process claim. Summary judgment in favor of the Alpine Defendants on that claim is therefore appropriate.[3]

---

[3] To the extent the Bull Moose claims the Alpine Defendants violated its right to substantive due process by revoking the building permit, the Alpine Defendants are entitled to summary judgment. The record does not show the Alpine Defendants acted in a conscience shocking or outrageous manner. *See infra* at II.F. The Council revoked the permit after determining that the conditions to which it was subject had not been met. The Council reconsidered the matter at subsequent meetings and reinstated the permit once it determined the conditions had been satisfied. That deliberate conduct does not shock the conscience of the court.

B.  Right to Pursue Property Claim Relating to Renewal of the Liquor
    License

Next, the Bull Moose contends the Alpine Defendants abused its

constitutional rights by interfering with the renewal of its liquor license.

"[T]he liberty component of the Fourteenth Amendment's Due Process

Clause includes some generalized due process right to choose one's field of

private employment, but a right which is nevertheless subject to reasonable

government regulation."  *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999).  The

sale of liquor is generally considered an area where broad government regulation

is reasonable.  *See Albertson's, Inc. v. City of Sheridan*, 33 P.3d 161, 168 (Wyo.

2001).  The Supreme Court of Wyoming has stated:

> As [the sale of alcohol] is a business attended with danger to the
> community, it may be entirely prohibited, or be permitted under such
> conditions as will limit to the utmost its evils.  The manner and
> extent of regulation rest in the discretion of the governing authority
> . . . .
>
> It has been long established that the legislature may control and
> regulate the sale of intoxicating liquors for the protection of the people.
> The purpose of the local licensing provisions found in §§ 12-4-101 to
> 702 . . . is the exercise of regulatory control by licensing authorities over
> those who engage in the retail sale of intoxicating liquors in Wyoming.

*Albertson's, Inc.*, 33 P.3d at 168 (internal quotation marks and citations omitted).

According to Wyo. Stat. § 12-4-104,

> When an application for a [liquor license] . . . renewal . . . has been
> filed with a licensing authority, the clerk shall promptly prepare a
> notice. . . .  The notice shall state that a named applicant has applied

-16-

> for a . . . renewal . . . and that protests against the [] renewal . . . will
> be heard at a designated meeting of the licensing authority.

The Supreme Court of Wyoming has held that a local licensing authority does not necessarily abuse its discretion or act arbitrarily and capriciously when it rejects a request to renew a liquor license based on the same facts upon which a former board approved renewal. *See Albertson's, Inc.*, 33 P.3d at 166–67. A licensing authority should exercise its own discretion as of the date an application for renewal is submitted. *See id.* "There is no vested right in a licensee to continue in the liquor business beyond the expiration of the date of the license under which he operates." *Id.* at 167. "A liquor license is a mere privilege, which is at all times in the control of the legislature." *Id.* at 168.

The Bull Moose alleges the Alpine Defendants interfered with its pursuit of property by violating its right to engage in its chosen field of private employment—i.e., alcohol sales. Specifically, the Bull Moose asserts that the Alpine Defendants disrupted its operations in violation of the Fourteenth Amendment by delaying renewal of its liquor license. According to the Bull Moose, the Alpine Defendants delayed renewing its liquor license in an effort to force the business to eliminate several forms of entertainment, including exotic dancing, rock concerts, poker tournaments, and amateur boxing. The Bull Moose fails to demonstrate, however, that the Alpine Defendants did anything other than

act in accordance with the law when determining whether to renew the license in 2004 and 2005.

First, under Wyoming law, the Bull Moose had no protected property interest in the continuation of its liquor license. Second, it was within the Council's discretion, as a local licensing authority, to refuse to renew the license. That was so even though renewal had been previously approved on essentially the same grounds. Third, Wyoming law required that the Council hear protests against the Bull Moose's requests for renewal. The number and length of the protests contributed to the delay in renewing the Bull Moose's license. The record indicates that Council meetings at which renewal of the liquor license was addressed were continued in both 2004 and 2005 so that further discussion on the matter could be heard. Finally, the Bull Moose's liquor license never lapsed and was never revoked. The Bull Moose remained able to serve and sell alcohol while its renewal applications were being considered. It is thus difficult to discern how delays in renewing the license injured the Bull Moose.

Based on the evidence presented, a reasonable jury could not find in the Bull Moose's favor on its license renewal claim. The record shows the Alpine Defendants acted in accordance with Wyoming law in considering the Bull Moose's applications for renewal of its liquor license. Accordingly, the district court did not err in granting summary judgment to the Alpine Defendants.

C. <u>Disparate Treatment Claim</u>

The Bull Moose also contends the Alpine Defendants singled out its business because they disapproved of it providing exotic entertainment.

To succeed on an equal protection claim as a "class of one," a party must demonstrate that (1) it has been intentionally treated differently than those similarly situated, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and (2) the difference in treatment was objectively irrational and abusive, *see Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1211 (10th Cir. 2006). *See generally Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152–54 (2008) (reiterating the validity of class-of-one claims and discussing *Olech*). Class-of-one claimants must show similarity in all material respects. *See id.* at 1212; *see also Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (requiring showing that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy"). This is a substantial burden. *Jicarilla*, 440 F.3d at 1213. "[A] court may properly grant summary judgment where it is clear that no reasonable jury could find that the [similarly] situated requirement has been met." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). Similarly, if there is an objectively reasonable basis for a difference in treatment, summary judgment is appropriate. *Jicarilla*, 440

F.3d at 1210. "We ask not whether the [d]efendants' proffered justifications were sincere, but whether they were objectively reasonable." *Id.* at 1211.

The Bull Moose alleges the Alpine Defendants treated it differently—more harshly—than other establishments serving or selling alcohol in Alpine. The Bull Moose contends that this disparate treatment violated its right to equal protection. Because the Bull Moose does not identify a satisfactory comparator, however, its class-of-one claim must fail.

The only other entity in Alpine with a "full" liquor license is the Snake River Saloon (the Saloon), and the Bull Moose and the Saloon are not substantially similar. As the Bull Moose admits, its establishment is more than five times larger, much busier, and regularly hosts more popular bands than the Saloon. The Bull Moose also acknowledges that, unlike the Saloon, it presents exotic dancers.

The Bull Moose does not demonstrate that it was treated differently than one similarly situated. It does not present a sufficient comparator. Summary judgment on the Bull Moose's equal protection claim is therefore appropriate, because no reasonable jury could find that the similarly situated requirement has been met.[4]

---

[4] Even if the Bull Moose could show that it was treated differently than sufficiently similar entities, its equal protection claim would not succeed, because the Alpine Defendants have a rational basis for treating the Bull Moose

(continued...)

-20-

D.  First Amendment Retaliation Claim Relating to Renewal of the Liquor License

In a claim related to its disparate treatment claim, the Bull Moose argues the Alpine Defendants retaliated against it for engaging in protected commercial speech.

"[A]ny form of official retaliation for exercising one's freedom of speech, including . . . legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks omitted).  To succeed on a First Amendment retaliation claim against a non-employer, a plaintiff must prove: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were substantially motivated to respond to his exercise of the constitutionally protected activity.  *See id.*

The Bull Moose alleges the Alpine Defendants delayed renewing its liquor license in 2004 and 2005 in retaliation for it providing exotic entertainment.  The

[4](...continued)
differently.  The Bull Moose is larger, busier, and provides different types of entertainment, including exotic dancing, poker tournaments, and amateur boxing, than other establishments in Alpine with liquor licenses.  As a result, there is necessarily more of a likelihood, relative to other entities, that negative secondary effects will arise from the Bull Moose's operation.  The Alpine Defendants thus have an objectively reasonable basis for approaching the Bull Moose with a more heightened degree of regulatory oversight than they would other establishments serving or selling alcohol in Alpine.

Bull Moose's First Amendment retaliation claim cannot succeed, however, because the Bull Moose does not set forth evidence that the Alpine Defendants' alleged conduct would cause it to stop hosting exotic dance shows.

We reiterate that the sale of alcohol is subject to broad regulation in Wyoming. As noted above, under Wyoming law, local licensing authorities must hear protests against applications for liquor license renewal. *See* Wyo. Stat. § 12-4-104. Also relevant to our inquiry, Wyoming law prohibits liquor-license holders from permitting public indecency in dispensing rooms. *See* Wyo. Stat. § 12-4-204. Public indecency consists of exposing the external genitalia, perineum, anus, pubic hair, or the female breast, with the intent of arousing sexual desire. *See* Wyo. Stat. §§ 6-2-301 & 6-4-201.

In both 2004 and 2005, renewal of the Bull Moose's liquor license was delayed for less than one month. As already discussed, the number and length of the protests against renewal of the license, which by law the Council was required to hear, accounted for at least a portion of that delay. As a local licensing authority, the Council also had reason to inquire whether the exotic performances held at the Bull Moose complied with Wyoming law concerning indecency in licensed establishments. That inquiry complicated the renewal process and necessarily contributed to the delay in approving the Bull Moose's application. Further, and perhaps most importantly for our purposes, the Bull Moose retained a valid liquor license at all material times—even while the Council considered

whether to renew the Bull Moose's license, it was authorized to serve and sell alcohol.

We find on the record before us that, in taking the actions that gave rise to the delays in the renewal of the Bull Moose's liquor license, the Council validly exercised its authority as a local licensing body and complied with Wyoming law. Furthermore, the renewal process, which never resulted in the Bull Moose even temporarily losing its license, could not have caused an injury that would have led a person of ordinary firmness to discontinue providing the entertainment offered at the Bull Moose. Based on the undisputed facts, and the Bull Moose's failure to present evidence of other actions creating a chilling effect on expression,[5] we conclude that the Alpine Defendants are entitled to summary judgment on the Bull Moose's First Amendment retaliation claim.

---

[5] In its opening brief to this court, the Bull Moose asserted that "[i]t was in fact forced to eliminate nude dancing, in exchange for renewal of its liquor license." Aplt. Brief at 30. The evidence presented, however, shows only that the Council required the Bull Moose to comply with Wyoming's indecency provisions as a condition of renewal in 2005. Moreover, the evidence put forth indicates the Bull Moose voluntarily agreed that exotic dancers appearing on its premises would wear "pasties." Aple. Supp. App. at 23.

E.  Section 1983 Conspiracy Claim

Finally, the Bull Moose contends the Alpine Defendants conspired to deprive it of the constitutional rights discussed above.

"Allegations of conspiracy may [] form the basis of a § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  An individual must, however, set forth specific facts showing an agreement and concerted action amongst the defendants.  *See id.*  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Id.*

Summary judgment in favor of the Alpine Defendants is appropriate on the Bull Moose's § 1983 conspiracy claim, because the Bull Moose does not present specific facts demonstrating agreement and concerted action by the Alpine Defendants.  While the Bull Moose does identify several independent actions individual Alpine Defendants took, it sets forth only conclusory allegations of conspiracy.  Further, as discussed above, we find no constitutional violations on which a conspiracy claim may be based.

F.  Due Process Claim Relating to Issuance of the Cease and Desist Order

The last set of arguments the Bull Moose presents involves allegations that Fire Marshall Narva illegally issued a cease and desist order shutting down its business in 2005.

"[T]he due process clause is not a guarantee against incorrect or ill-advised government decisions."  *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222

(10th Cir. 2006) (internal punctuation omitted).  Violations of state law do not necessarily support valid substantive due process claims.  *See Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995) ("[V]iolations of state law . . . generally do not give rise to a [§] 1983 claim.").  An arbitrary deprivation of a property right may violate the substantive component of the Due Process Clause if the arbitrariness is extreme.  *See Camuglia*, 448 F.3d at 1222.  "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Id.* (internal quotation marks omitted).  A high level of outrageousness is required.  *See id.* at 1223.  As we have stated:

> The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.  It is well settled that negligence is not sufficient to shock the conscience.  In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.

*See id.* at 1222 (internal quotation marks omitted).  These limits reflect the need to restrict the scope of substantive due process claims, the concern that § 1983 not replace state tort law, and the need to give deference to local policymaking bodies' decisions relating to public safety.  *See id.* at 1223.

The Bull Moose alleges Fire Marshal Narva violated its right to substantive due process by issuing the cease and desist order that prohibited it from being operated or occupied.  Fire Marshal Narva issued the order because the Bull

Moose did not install sprinklers in the main building when it built the addition. In asserting its substantive due process claim, the Bull Moose emphasizes the state court's reversal of the cease and desist order. The state court found Fire Marshal Narva did not have the statutory authority to issue the order. It held that since the State Fire Marshal's Office approved the Bull Moose's plans for the addition without indicating that sprinklers were required in both the addition and the main building, the Office could not revisit that approval after the completion of construction. While the Bull Moose sets forth evidence that Fire Marshal Narva's decision to issue the order was incorrect, it does not provide any evidence that his conduct was conscience shocking, arbitrary in the extreme, or highly outrageous. As a result, the Bull Moose cannot succeed on its substantive due process claim.

Rather than demonstrate that Fire Marshal Narva acted in a conscience shocking manner, the undisputed record before us—the State Fire Marshal Office's documents, the state court's decision addressing the cease and desist order, and Fire Marshal Narva's deposition—shows that Fire Marshal Narva acted in a methodical and reasonable, albeit unauthorized, manner. Fire Marshal Narva issued the order after the Bull Moose had been informed several times that sprinklers were required in both the addition and main building, after the State Fire Marshal's Office negotiated a time line for satisfactory sprinkler installation with the Bull Moose, and after obtaining the advice of the Office's legal

representative. Further, it is undebatable that the building code called for the level of sprinkler installation Fire Marshal Narva sought to enforce at the Bull Moose.

The Bull Moose does not demonstrate that Fire Marshal Narva acted in a highly outrageous, extremely arbitrary, or conscience shocking manner. As such, Fire Marshal Narva is entitled to summary judgment on the Bull Moose's substantive due process claim.

## III.  Conclusion

For the foregoing reasons, the Alpine Defendants and Fire Marshal Narva are entitled to summary judgment. We therefore AFFIRM the rulings of the district court.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge