No. 44,781

Cecil McDonald, *Appellant,* v. Glen Bauman, *Appellee.*

(433 P. 2d 437)

Opinion filed November 13, 1967.

*Tom Crossan,* of Independence, argued the cause and was on the brief for the appellant.

*Michael A. Barbara,* of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action for damages, both actual and punitive, wherein the plaintiff seeks to recover for the defendant's willful, wanton, malicious and cruel conduct in coming onto the plaintiff's premises, in plaintiff's absence, and in shooting and

wounding plaintiff's dog in the presence of plaintiff's wife without justification or excuse and without the acquiescence or condonation of the plaintiff or his wife. The jury, after hearing the case, returned a verdict for the defendant, and the plaintiff has duly perfected an appeal.

The three issues presented on appeal concern: (1) The construction and application of K. S. A. 47-646 to the facts in this case; (2) instructions given by the trial court; and (3) exclusion of evidence.

K. S. A. 47-646 provides:

"It shall be lawful for any person at any time to kill any dog which may be found injuring or attempting to injure any cattle, hogs or sheep."

On the 8th day of December, 1965, at about 9:00 a. m., Glen Bauman (defendant-appellee) heard hogs squealing in the hog lot on his farm near Neodesha, Kansas. After procuring his .22 caliber rifle he immediately ran to his hog lot and found three dogs attacking and biting his hogs. One was a German Shepherd, another a small black dog, and the other was a little brown dog.

He shot at the German Shepherd dog. It yelped and the dogs ran out of the lot headed in an easterly direction across the pasture of his neighbor York, where he shot several more times at the dogs. He then ran to his pickup truck, pursued the dogs and intercepted them in the York pasture into which they had run. There he took several more shots at the three dogs.

All three dogs ran onto the property of Cecil McDonald (plaintiff-appellant), but the two smaller dogs ran on across the property, while the German Shepherd stopped.

Bauman did not fire into the McDonald place from the pasture, but after the dogs ran onto the McDonald place he got into his truck, drove onto the road and in the driveway onto the McDonald premises. Mrs. McDonald and her nine-year-old son, Louis, were in the yard. Bauman told Mrs. McDonald that her dog had been involved in killing some hogs, that he shot it and that it was down by a car on their property.

According to Bauman's testimony, "Mrs. McDonald stated, 'Well, we can't have a dog that will kill your livestock, so go ahead and finish the job.'"

He then testified he shot the dog and Mrs. McDonald said, "'We intended to get rid of the dog anyway.'" Bauman said he shot the dog twice; that it ran under the house; and before he left he told

the McDonald boy to leave the dog alone under the house and let his father look after the dog.

When Bauman first came onto the McDonald property the German Shepherd dog was already wounded and blood was squirting out of the side of her neck. The shells used by Bauman were twenty-two shorts and accounted for the fact that they were not powerful enough to kill the dog.

Cecil McDonald (plaintiff-appellant) was away from his home on business until late in the afternoon on the day in question. When he returned home he found his female German Shepherd dog, "Fraline," had been shot and was under the house. He helped the dog out from under the house, took her to a veterinary clinic and instructed the veterinarian to save the dog. He said to the veterinarian, "I don't care what it costs, save her." As a result the dog was treated at the clinic for three or three and one-half weeks where the veterinarian operated on her right hind leg, performing an open reduction of the fracture of the right femur, removing about three and one-half inches of the bone. Medical bills amounted to $59.75 and the future expense of treating the dog was estimated to be $35 to $60.

McDonald testified that he purchased the German Shepherd dog, named "Fraline," for $75; that she was eligible for registry but not registered; that she was trained as a watch dog for his used car lots; that he valued the dog at $3,000 or $4,000, and as a result of her injuries she is not worth much as a watch dog. In his petition McDonald sought actual damages in the amount of $2,950.75 and punitive damages in the amount of $5,000. (See, 1 A. L. R. 3d 997 for an annotation on "Measure and Elements of Damages for Killing or Injuring Dog.")

In his pleadings McDonald alleged that he was the owner of the German Shepherd dog, Fraline, and on the day in question the defendant Bauman came to the plaintiff's home uninvited and:

". . . did then and there willfully, wantonly, cruelly, maliciously, and without justification or excuse therefor, fire a gun at, toward and into the above described dog owned by the plaintiff. That said defendant fired six (6) bullets into said plaintiff's dog, and that said bullets so fired at and into said dog caused numerous wounds to said dog. That all of the bullets pierced the body of said dog causing grievous wounds, injuries and damage to said dog. That said defendant shot said dog six times in the presence of Mrs. Cecil McDonald, the wife of the plaintiff. . . . That at no time had either Mr. and Mrs. Cecil McDonald acquiesced or condoned the shooting of the dog belonging to the said Cecil McDonald."

In his answer the defendant Bauman alleged that on or about the 8th day of December, 1965, he did:

". . . shoot a dog apparently belonging to plaintiff herein and that said dog was first shot on defendant's premises in the hog feed lot where it was bothering, worrying and attempting to injure defendant's hogs and further that he shot at the dog as it was leaving the premises and that in pursuit of said wounded dog he followed it to the Cecil McDonald premises where defendant told Mrs. McDonald that he had shot the dog over on defendant's premises in his feed lot and had followed it over to the McDonalds and asked her if she wanted him to finish the job or if she wanted to have Cecil, her husband, do it and she specifically told defendant and directed him to go ahead and finish the job as he had already shot it and then, after being requested to do so, he shot the dog two times and left the McDonald premises. Defendant specifically denies that he shot said dog maliciously and without justification or excuse therefor and further does allege that he acted in good faith and believes that he was fully justified, under the provisions of K. S. A. 47-646, in attempting to protect his property and in the action taken and further that he would have been legally justified in killing said dog free from any liability." ·

The appellant first contends the trial court conducted the trial of the case, which resulted in a verdict for the defendant, upon the wrong theory. By instruction No. 4 the trial court instructed:

"Since defendant admits that he shot plaintiff's dog the burden of proof is upon the defendant to show by a preponderance of the evidence that he was justified in shooting it. In this respect you are instructed that it is lawful for any person at any time to kill any dog which may be found injuring or attempting to injure any cattle, hogs or sheep. Therefore, the defendant has the burden of proving by a preponderance of the evidence that he did find plaintiff's dog injuring or attempting to injure defendant's hogs. If you do so find, however, then it is a complete defense to the action and your verdict must be in favor of defendant."

The appellant contends the trial court instructed, in substance, that if his dog was found by the appellee injuring or attempting to injure appellee's hogs, this fact, in and of itself, operated as a complete defense to the action, *regardless of the time which might have elapsed* between the injuring or the attempt to injure the hogs and the shooting of the dog.

On this point the appellant cites the court to *State v. Fisher*, 142 Kan. 627, 50 P. 2d 983, for the proposition that the statute (47-646, *supra*) gives the owner of livestock the right to kill a dog only when the dog is found injuring or attempting to injure any cattle, hogs or sheep, *or when it has been found worrying or injuring them at a reasonable time prior to the killing of the dog.* It is argued there

is nothing in this statute which makes it lawful to wound a dog and then leave it without destroying it, even if the dog is guilty.

As part of the appellant's case in chief, he called the appellee as a witness and asked him:

"Q. Now I will ask you, Mr. Bauman, you claim you had some hogs killed in September of 1965?

"A. Yes, sir."

Though not within the issues framed by the pleadings, the appellant sought to make the most of this and other testimony along the same line by contending that the jury was entitled to speculate and consider the September incident as justification for the shooting of the dog in December. (The evidence establishes that none of the appellee's hogs was killed on December 8.) We find no merit to this contention. Furthermore, we find no merit in the contention that the dog was merely *wounded*, whereas the statute authorizes one to kill a dog which has been found injuring or attempting to injure any cattle, hogs or sheep. In this situation the lesser act of wounding is included in the greater act of killing which is authorized by the statute.

Heretofore the provisions of 47-646, *supra*, have not been squarely before this court for construction. *State v. Fisher*, supra, cited by the appellant, was a criminal prosecution under R. S. 21-565 for killing a dog belonging to another. The court there said:

"Appellant complains of the inconsistency between instructions Nos. 5 and 6, the former stating the right under the statute to kill a dog found worrying or injuring sheep, and the latter stating in detail the pro and con of such feature of worrying or injuring them, or within a reasonable time prior to the killing of the dog it had been worrying or injuring them. This seems to be along the usual line of elucidating both sides of a pertinent situation. Appellant further requested the court to add to the last instruction a clause to the effect that if they found that the defendant in good faith believed it was necessary to kill the dog to prevent injury to his livestock, then the act was not maliciously committed and they should find the defendant not guilty. The court declined to make this addition, and we think it was justified in so declining, because the counter abstract states, as quoted above, that the defendant testified that this dog 'has never worried or killed any of his sheep or other livestock.' Appellant argues as against this statement of his own that the killing of the dog would not be willful or malicious if he thought it necessary to do so to protect his sheep. The trouble with this reasoning is that the statute above quoted in giving one a right to kill a dog does not go that far. It only applies when the dog has been found worrying or injuring them. The killing of the dog not found worrying or injurying [*sic*] them will necessarily be unlawful." (pp. 629, 630.)

Basically we are here concerned with the justification of a land-

owner to kill a trespassing dog not actually engaged in the act of depredation at the time of its destruction.

Cases in this country seem to be about equally divided on the question in the application of the common law. However, where statutes are involved conferring the right to kill dogs that are worrying, wounding or killing sheep or other livestock, there is more uniformity in the rule. The majority of the courts hold, where a statute has been enacted, that the dog need not necessarily be in the act of depredation to justify the killing. (15 A. L. R. 2d 578 [§4, p. 584].)

Some states which adhered to the strict common law concept that the dog must be engaged in the act of depredation to justify the killing, after the enactment of a statute similar to K. S. A. 47-646, have held the statute did not confer upon the owner of livestock any power to kill a dog when actually engaged in killing such livestock that such owner did not possess at the common law, but the statute did confer upon him the right to pursue and kill the dog after the act of depredation had been accomplished and the peril had ceased—a right, the existence of which at common law may well be doubted. (*Reed v. Goldneck,* 112 Mo. App. 310, 86 S. W. 1104 [1905]; *Bean v. Branson,* 217 Mo. App. 399, 266 S. W. 743 [1924]; *Anderson v. Smith,* 7 Ill. App. 354 [1880]; and *Eaton et al. v. Lake et al.,* 100 Or. 622, 197 Pac. 292 [1921].)

The instruction requested by the appellant, which the trial court refused, would require a landowner in the case of a trespassing dog to sustain the burden of proving that the act of depredation by the trespassing dog "was within such a reasonable period immediately prior to the shooting of the dog as would justify the shooting of plaintiff's dog."

Under such instruction the appellant argues there would be no justification on the part of a landowner to shoot a trespassing dog, after it left the premises and the peril to the hogs, as here, had ceased. The appellant contends the trial court seemed to ignore his theory "that, as a matter of law, the defendant had no right to enter onto plaintiff's premises three-quarter mile from his own home after the excitement had completely subsided and to then start shooting."

On this theory of the case the appellant moved for a directed verdict, and for judgment notwithstanding the verdict on two different occasions, all of which the trial court overruled.

In his brief the appellant says his complaint is not merely for the injuring of the dog, but he is seeking punitive damages because of the fact appellee took the law into his own hands and harassed not only the dog but also the appellant's wife and his son in his absence.

Actually, the issue presented on appeal is not quite as broad as the appellant seems to make it in his brief. Nowhere in the petition of the appellant is it alleged that the appellee harassed the appellant's wife and minor son, or that he frightened them. The petition merely alleges that the plaintiff's wife was present when the defendant shot the plaintiff's dog on the plaintiff's premises, and the record discloses no amendment or attempt to amend the petition.

The appellant says in his brief regardless of what his wife said under the duress of an angry man with a gun in his hand, upon her own premises, the appellant was, and is, aggrieved by the conduct of this appellee.

In construing the provisions of K. S. A. 47-646, as applied to the facts in this case, we hold a person has a lawful right to shoot, and either injure or kill, a trespassing dog which he finds on his premises injuring or attempting to injure any cattle, hogs or sheep, either at the time the dog is found in the act of depredation, or within a reasonable time thereafter, and he has the right within such reasonable time, if necessary, to pursue such dog after it has left his premises, and to shoot, and either injure or kill, such dog off his premises, provided if in so doing he enters upon another's land, he enters with authority, or under such circumstances that authority to enter such other's land may be implied. Obviously, the right of a person to pursue another's dog and shoot it could not be asserted to nullify an unlawful trespass.

Under the foregoing rule the instruction requested by the appellant was ambiguous and too restrictive, and the trial court did not err in refusing to give the requested instruction. On the other hand, instruction No. 4 given by the trial court was too broad in that it did not limit the right of the appellee to shoot the dog to a reasonable time after the act of depredation by the appellant's trespassing dog. This infirmity, however, did not prejudice the appellant. For upon all the evidence pertinent to the issues framed by the pleadings in this case, once the jury found the appellant's dog was caught by the appellee in the act of depredation upon the appellee's premises, the appellee was in hot pursuit of the appellant's dog. Under these circumstances the shooting of the appel-

lant's dog on the appellant's premises occurred within a reasonable time after the dog was caught in the appellee's hog pen attacking hogs, as a matter of law.

Whether the appellee entered the premises of the appellant with the consent, or the implied consent, of the appellant or his wife, was a question for the jury to determine, but on this point the trial court gave the jury no instruction, and the record does not show the appellant requested one.

The appellant's theory throughout the trial was that the appellee was confined to his own premises in exercising rights conferred upon him by 47-646, *supra*.

The trial court instructed on the nature of the appellant's action, wherein the appellant alleged the acts of the appellee in shooting the dog were done willfully, wantonly, cruelly, maliciously, and without justification or excuse. It instructed on the nature of the appellee's answer wherein he alleged justification. By instruction No. 9 the jury was given the definition of the terms "willful," "wanton" and "malice" in connection with the instruction on punitive damages. Under these circumstances we think the jury was fully apprised of the issues framed by the pleadings which it was called upon to determine.

*Natanson v. Kline,* 186 Kan. 393, 350 P. 2d 1093, upon which the appellant relies for additional instructions, does not support him on the facts here confronting us. The appellant cites *Natanson* for the proposition that it is reversible error if the trial court fails to define the issues and state the pertinent law with accuracy, when further instructions are requested. Here, however, the trial court did define the issues framed by the pleadings and stated the law relating thereto upon which the appellant requested instructions with sufficient accuracy, under the facts, to avoid prejudice to the appellant's rights in the action.

Upon conflicting evidence the jury found generally in favor of the appellee, apparently giving full credence to the appellee's account of the incident. It thus found the appellee had sustained the burden of proof to show by a preponderance of the evidence that he was justified in shooting the dog. It must be presumed under these circumstances the jury found all facts necessary to sustain the judgment in favor of the appellee. (*Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130.) It thus found, as the appellee testified, that when the appellee entered upon the appellant's premises and told Mrs. McDonald what had occurred, she told him "Well, we can't

have a dog that will kill your livestock, so go ahead and finish the job." From such testimony the jury is presumed to have found the appellee was authorized to be on the appellant's premises and shoot the appellant's dog.

Testimony of other witnesses tended to bolster the appellee's case. A neighbor who lived a quarter of a mile from the McDonald place said he knew the McDonald dog named Fraline; that she growled at someone and the appellant said "I am afraid I get one more litter of pups out of her I'm going to have to do something about her."

Another neighbor who lives in the first house south of the McDonald home testified that she knew the dog, Fraline, and about three years ago the dog came on her premises and killed three chickens.

Mrs. McDonald testified when the appellee came onto their premises he was mad, red-faced, excited and had a gun. This testimony tended to confirm the fact that the appellee was in hot pursuit of the dog, after he found the dog on his premises committing an act of depredation.

The appellant complains of the trial court's instruction on the punitive damages and in particular the portion wherein the jury was told:

"You cannot return a verdict for punitive damages unless you find that plaintiff is entitled to actual damages, . . ."

The appellant concedes that it was up to the jury to determine whether or not punitive damages were assessable in this case, but contends the question as to whether or not there were actual damages could not fairly be brought before the jury, since there was actual damage. On this point the appellant refers to the fact that he had actual veterinary expenses which establishes that he did have actual damages.

The point is not well taken. Before punitive damages may be awarded there must be a *right to recover actual damages.* (*Watkins v. Layton,* supra.)

Other instructions given by the trial court concerning which appellant makes complaint have been reviewed but are found to be of insufficient merit to warrant further consideration.

The appellant next complains of the refusal of the trial court to admit photographs in evidence. These were pictures of the appellant's dog with his children and of the appellant's premises.

The trial court ruled that these photographs were irrelevant. On the issues presented by the pleadings in this case, the admission of these photographs was within the discretionary power of the trial court, and we cannot say on appellate review that the trial court erred in excluding these photographs as being irrelevant.

Where the jury, as here, returns a general verdict in favor of the appellee, and the appellant fails to establish on appellate review that he was prejudiced by the instructions given or the evidence excluded by the trial court, the appellee is entitled to have the evidence disclosed by the record construed in the light most favorable to him. Accordingly, the facts gleaned from the record have heretofore been stated most favorably to the appellee. The record as so construed supports the verdict of the jury and the judgment of the trial court.

The judgment of the lower court is affirmed.