**F I L E D**
United States Court of Appeals
Tenth Circuit

**FEB 16 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CAROLYN CLARK and
KAROLYN'S PET RESORT,

      Plaintiffs - Appellants,

v.

CITY OF DRAPER; DANIEL F.
BERTCH; LESLIE CUTLER; JAN
MCNAIR; BOYD JOHNSON and
CITY OF SANDY,

      Defendants - Appellees.

No. 97-4134

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 95-CV-458)**

---

Franklin R. Brussow, Salt Lake City, Utah, for Plaintiff - Appellant.

Andrew M. Morse, Salt Lake City, Utah, for Defendants - Appellees.

---

Before **BRISCOE**, **McKAY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Appellant Carolyn Clark, owner of a private zoo in Draper City, Utah,

brings this § 1983 action against the cities and various officials of Draper City

and Sandy City, Utah, for violating her constitutionally protected property interests in two miniature blue foxes when the officials impounded and subsequently destroyed the animals.[1] The district court granted appellees' summary judgment motion as to all claims.[2] We affirm the district court and hold that the cities and their officials were acting within their police power under state and municipal law in seizing the foxes and testing them for rabies.

## I

On May 18, 1994, four-year-old McKinley Eastmond suffered a skin abrasion while viewing two miniature blue foxes at appellant's petting zoo as part of a school field trip. There were no witnesses to the incident.

The boy's mother, Mrs. Eastmond, took him to a local pediatric emergency room. After her examination of the wound, the treating physician informed the Utah Department of Health that the boy may have been exposed to rabies. Mrs. Eastmond subsequently contacted Janet McNair, a Draper City Animal Control Officer and a defendant-appellee in this case. Upon contacting state officials on

---

[1] Appellant also appears to imply a claim of malicious prosecution against Draper City officials relating to her criminal prosecution, but fails to address the issue in her brief. Accordingly, we consider the issue to be waived on appeal. See Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (dismissing perfunctory complaints that fail to frame and develop an issue as insufficient to invoke appellate review).

[2] In a prior appeal in this case, we vacated an earlier grant of summary judgment and remanded the case for reconsideration by a newly assigned judge because the original district judge should have recused himself. See Clark v. City of Draper, No. 96-4006, 1997 WL 157382 (10th Cir. Apr. 4, 1997).

the morning of May 19, McNair learned that under state law, foxes are considered "wild" for purposes of rabies control because there is no licensed vaccine for foxes. Under Utah law and administrative regulations, the State Health Department has authority to control and prevent the spread of rabies. See Utah Code Ann. § 26-6-3 (1998) (granting State Health Department the authority to investigate and control communicable diseases); Utah Code Ann. § 26-6-11 (1998) (directing State Health Department to investigate reports of rabies). State regulations demand that any wild animal that bites or scratches a person be tested for rabies at once. The test requires that the animal be killed and its brain examined for evidence of rabies. See Utah Admin. Code 386-702-5(2.4) (1998).

A state official advised McNair to test both animals[3] for rabies within 48-72 hours. If tests were not conducted within that time, the boy would have to begin taking a series of rabies shots. Meanwhile, according to McNair, Ms. Clark resisted the officer's initial efforts to move the foxes to a secure enclosure while McNair conferred with state officials about the proper measures to take under the circumstances.

On the evening of May 19, upon a motion of defendant-appellee Draper City Prosecutor Leslie Cutler, Judge Daniel Bertsch of the Draper City Justice

---

[3]Because neither the boy nor any witnesses could identify the fox that had allegedly caused the injury, and because the foxes were housed together, both animals were under suspicion.

Court, also a defendant-appellee in this case, issued an Order of Impoundment. At 11:30 P.M. that night, the foxes were impounded and isolated.[4] Early the next morning, the Draper City Justice Court held a hearing concerning the disposition of the foxes in which Ms. Clark, Draper City officials, and state health officials were given the opportunity to present evidence. The city and state presented witnesses and evidence; the plaintiff offered only her own testimony that the foxes had never before bitten a person. The Court ordered that the foxes be turned over immediately to state health officials, and the animals were killed. The animals' brains tested negative for rabies.

## II

We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291, and we review a grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

To prove her claims, appellant must show that the municipal officials and municipalities[5] named in her suit acting "under color of any statute, ordinance,

---

[4]Sandy City officials were asked to help impound and quarantine the foxes because Draper City has inadequate personnel and facilities to house animals suspected of carrying the rabies virus.

[5]Although § 1983 refers only to "persons," in Monell v. Department of Social Services, 436 U.S. 658, 690 & n. 54 (1978), the Supreme Court held that § 1983 applies to "local government units which are not considered part of the State for Eleventh Amendment purposes."

(continued...)

- 4 -

regulation, custom, or usage, of any State" subjected her "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Her argument implicates her substantive and procedural due process rights stemming from her property in the foxes.

The initial issue we must address in considering whether appellant suffered a violation of her due process rights, therefore, is the precise nature of her property in the foxes. At the turn of the twentieth century, both the United States Supreme Court and the Supreme Court of the Territory of Utah held that property in domesticated canines is subject to the state's police power for the protection of its citizens. See Sentell v. New Orleans & C.R. Co., 166 U.S. 698, 700-04 (1897) (noting that "property in dogs is of an imperfect or qualified nature," and that even if perfect, it would be "subject to the police power of the state"); Jenkins v. Ballantyne, 30 P. 760, 760 (Utah 1892). In this century, numerous states have upheld this description of property in domesticated canines. See, e.g., Thiele v. City and County of Denver, 312 P.2d 786, 789 (Colo. 1957); City of Water Valley v. Trusty, 343 So.2d 471, 472 (Miss. 1977); but see 3A C.J.S. Animals § 5 (discussing "modern trend" of granting "full and unqualified status as property" to dogs). As the Supreme Court of Michigan has noted, however, "[w]hether the

---

(...continued)
Monell requires that for the municipality to be liable, its allegedly unconstitutional act must execute "a government's policy or custom." Id. at 694.

property in dogs is regarded as qualified or absolute, they are subject to the police power of the state, and may be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." People v. Yeo, 302 N.W.2d 883 (Mich.App. 1981) (quoting Bugai v. Richet, 242 N.W. 774, 774 (Mich. 1932)). Even assuming appellant's property right is unqualified, when foxes are suspected of infecting a human with rabies, under Utah law they can legitimately be subjected to drastic regulation for purposes of rabies prevention.

Appellant's argument that because the foxes are "domestic" for purposes of Utah Admin. Code 657-3-1, her property interest enjoys greater protection is irrelevant. Utah has adopted the Compendium of Animal Rabies Control as its reference document for animal vaccine use. See Utah Admin. Code 386-702-5(3.2) (1998). The Compendium explicitly includes all foxes in its list of "wild" animals, and states that no rabies vaccine is licensed for use on wild animals. See National Ass'n of State Pub. Health Veterinarians, Compendium of Animal Rabies Control, § III(B)(1)(d)(1) (1991). See also Centers for Disease Control, Rabies Prevention–United States (1991) (characterizing foxes as "wild animals" and stating that they are among those animals "most often affected with rabies and the cause of most indigenous cases of human rabies in the United States since

1960"). The foxes were therefore properly treated as "wild" for rabies control purposes.

Appellant further argues, however, that because the city has established a set of local animal control ordinances that cover rabies vaccinations and the handling of rabid animals, see Draper City, Utah, Code §§ 7-5-7 & 7-5-8, local officials could only follow the dictates of city law rather than those of applicable state regulations in their response to the threat of rabies. Under the city ordinance, appellant argues, her foxes were subject to quarantine rather than to the immediate and fatal testing for rabies that the state requires for "wild" animals. This argument is incorrect.

State law remains binding even in areas covered by municipal ordinances. See Utah Const. art. XI, § 5 (the state's grant of authority to municipal corporations cannot limit or restrict the power of the state legislature in state affairs and laws of general applicability); Utah Code Ann. § 10-1-108 (1996) (the provisions of the Utah Municipal Code "shall not be considered as impairing, altering, modifying or repealing any of the jurisdiction or powers . . . of state government"). In matters where "uniform state action" is often required, such as in the protection of the health of the state's citizens, "[t]he duty of the state cannot be circumscribed by city limits." Salt Lake City v. International Ass'n of Firefighters, 563 P.2d 786, 789 (Utah 1977). Furthermore, the exercise of police

power is an attribute of state sovereignty that the state may delegate without relinquishing to municipalities; when the state chooses to regulate and act under its police power, then, its laws and operations must predominate. See id.; Allgood v. Larson, 545 P.2d 530, 532 (Utah 1976) ("the state may always invade the field or regulation delegated to the cities and supercede, annul, or enlarge the regulation which the municipality attempted") (quoting Salt Lake City v. Kusse, 85 P.2d 802 (Utah 1939) (Larson, J., dissenting)). And as numerous state supreme courts have concluded, the power to protect the public health and welfare from contagious diseases by destroying infected animals arises from the police power of both the state and its municipalities. See, e.g., Ruona v. City of Billings, 323 P.2d 29, 30 (Mont. 1958); City of Dickinson v. Thress, 290 N.W. 653, 655 (N.D. 1940); Rapid City v. Tuning, 147 N.W.2d 604, 605 (S.D. 1967); King v. County of Arlington, 81 S.E.2d 587, 589-90 (Va. 1954).

Having held that appellant's property right in her foxes is entirely subject to applicable state laws and regulations protecting the public from the threat of rabies, we turn to the specific Utah regulation prescribing the disposition of a fox under suspicion of infecting a human with rabies. Utah regulations require that any wild animal that bites or scratches a person "shall be killed at once . . . and the brain submitted . . . for examination for evidence of rabies." Utah Admin. Code 386-702-6(2.4) (1998). The state clearly places the interests of humans who

may have contracted rabies from a wild animal over the life of the animal; in an emergency situation, the property rights of the animal's owner are entirely subject to the state's police powers.[6]

### III

Given appellant's limited property right as against the state's police power, her due process claims must fail.[7]

### A

Appellant claims that the procedures local officials employed in seizing and destroying the animals violated her procedural due process rights. "We engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted). "The existence of a property interest is defined by existing rules or understandings that stem from an independent source such as state law." Driggins v. City of Oklahoma City, 954 F.2d 1511, 1513 (10th Cir. 1992) (citation and internal quotations omitted).

---

[6]Although appellant argues that testimony from her criminal trial indicates that the child's injury may not have been from a bite, under the circumstances appellees reasonably dealt with the foxes under Utah Admin. Code 386-702-6(2.4).

[7]We need not address the issue of whether appellant has a viable takings claim under the Fifth and Fourteenth Amendments of the federal constitution, because she has failed to raise such a claim in her appeal.

As discussed supra, the entirety of appellant's property right in foxes suspected of infecting a young boy with rabies was subject to the city's police power, as delegated by the state and as defined under state law. The postdeprivation (but pre-destruction) hearing that the city provided in this case was adequate. Although normally a property owner is entitled to a predeprivation hearing, where, as in this case, the state must act quickly, a meaningful postdeprivation hearing is adequate. See Hudson v. Palmer, 468 U.S. 517, 531-33 (1984). Appellant's postdeprivation hearing before a local magistrate (with the opportunity to be heard, to present witnesses, and to be represented) was hastily convened on the morning after the city's late-night impoundment of the foxes, and undoubtedly caused appellant some hardship.[8] Under the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), we consider the private interest involved, the risk of erroneous deprivation resulting from the procedures used, the probable value of additional procedural safeguards, and the government's interest in efficient procedures, see id. at 335, and hold that Draper

---

[8]Insofar as appellant's brief may be read to argue that the impoundment was a seizure in violation of the Fourth Amendment, her argument is clearly foreclosed by the valid impoundment order. Nor do her allegations of impropriety in the issuance of that order rise to the level of a due process violation.

City's process was sufficient, particularly in light of the government's strong interest in public health and in the speedy resolution of rabies tests on the foxes.[9]

**B**

An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process clause of the Fourteenth Amendment. See Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483, 489 (10th Cir. 1991). Any substantive due process claim must represent "more than an ordinary tort to be actionable under § 1983," Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995), and must "shock the conscience." Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992). To reach that level, the government action must be deliberate, rather than merely negligent. See id. at 127 n.10.

---

[9]Numerous courts have held that government officials, acting under their general police powers and statutory authority, may act in advance of full judicial adjudication in destroying an animal suspected of being infected with contagious disease. "The emergency may be such as not to admit of the delay essential to judicial inquiry and consideration, or the subject of such action and process may be of such a nature, or the conditions and circumstances in which the act must be performed to effect the protection and given effect to the law may be such, as to render judicial inquiry and consideration impracticable." See Sentell, 166 U.S. at 705 (quoting Jenkins, 30 P. at 760). See also Engsberg v. Town of Milford, 601 F. Supp. 1438, 1445 (W.D. Wis. 1985) (finding that a government official's negligent killing of plaintiff's healthy dogs constituted neither a substantive nor a procedural due process violation), aff'd, 785 F.2d 312 (7th Cir. 1986); Newark & S.O.H.R. Co. v. Hunt, 12 A. 697, 701 (N.J. 1888) (upholding the constitutionality of legislation that authorizes the summary destruction of diseased horses, because the legislation allowed for postdeprivation adjudication). As we have previously noted, see supra n.7, we need not address whether such government actions constitute takings for which animal owners should be compensated.

On the factual record before us, appellant cannot demonstrate that the city's necessarily hasty actions in the abatement of a potentially dangerous nuisance were intentionally egregious. Nor, given appellees' actions under valid state public health legislation, can their taking of appellant's property be considered arbitrary. Therefore, neither due process claim has merit.

**IV**

The district court's grant of summary judgment to defendants is AFFIRMED.