Carroll v. County of Monroe

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2012

(Argued: February 8, 2013          Decided: March 12, 2013)

SHERRY CARROLL, Individually and as Natural Parent
& Legal Guardian on behalf of David Carroll & Devan White,
both Infants under the age of eighteen,

*Plaintiff-Appellant*,

—v.—

COUNTY OF MONROE; MONROE COUNTY SHERIFF'S DEPARTMENT; PATRICK M. O'FLYNN,
Sheriff of Monroe County in his Official Capacity; DEPUTY SHERIFF JAMES CARROLL, in his
official and individual capacity,

*Defendants-Appellees.*[*]

Docket No. 12-975-cv

————————————————————————

B e f o r e : WALKER, KATZMANN, and LYNCH, *Circuit Judges.*

————————————

Appeal from a March 9, 2012, judgment of the United States District Court for the Western District of New York (Payson, *M.J.*) denying Plaintiff-Appellant's motion to set aside a jury verdict or, in the alternative, for a new trial.  We hold that the district court did not err in denying the Plaintiff-Appellant's motions because there were sufficient facts for a reasonable jury to conclude that she

———————————

[*] The Clerk of Court is directed to amend the caption as shown above.

failed to prove that the shooting of her dog by police was an unreasonable seizure under the Fourth Amendment. **AFFIRMED**.

————————————

CHRISTINA A. AGOLA, Rochester, N.Y., *for Plaintiff-Appellant.*

BRIAN E. MARIANETTI, Deputy County Attorney, *for* William K. Taylor, Monroe County Attorney, Rochester, N.Y., *for Defendants-Appellees*.

————————————

PER CURIAM:

Plaintiff-Appellant Sherry Carroll ("the plaintiff") appeals from a March 9, 2012, decision and order of the United States District Court for the Western District of New York, which denied the plaintiff's motion to set aside a jury verdict or, in the alternative, for a new trial. After a two-day trial, the jury found that the plaintiff failed to prove her claim—brought under 42 U.S.C. § 1983—that the shooting of her family's dog by Deputy James Carroll ("Deputy Carroll") during the execution of a search warrant of her home was an unconstitutional seizure in violation of the Fourth Amendment. On appeal, the plaintiff contends that the Defendants-Appellees' failure to train its officers regarding non-lethal means to secure dogs and to formulate a plan to restrain the plaintiff's dog using non-lethal means rendered Deputy Carroll's shooting of her dog unconstitutional as a matter of law.

## BACKGROUND

The facts of this case are undoubtedly tragic. On October 11, 2006, Deputy Carroll and other officers from the Greater Rochester Area Narcotics Enforcement Team executed a "no-knock" warrant for the plaintiff's home. A no-knock warrant permits officers to enter a residence without knocking and announcing their presence and is issued when there is reason to

believe that the occupants of the residence will, if the officers announce themselves prior to entry, pose a significant threat to officer safety or attempt to destroy evidence. The officers in this case used a battering ram to break through the front door, and Deputy Carroll, who was in charge of securing the entryway, was the first to enter the house. Deputy Carroll immediately saw a dog growling, barking, and quickly and aggressively approaching him. Once the dog had advanced to within a foot of him, Deputy Carroll fired one shot from his shotgun at the animal's head and killed him. According to Deputy Carroll, the plaintiff was not close enough to the dog to help restrain him from charging at the officers.

Prior to executing the warrant, Sergeant Michael DeSain briefed the team and mentioned that a dog would be present at the plaintiff's home. The team did not discuss a plan for controlling the dog or formulate a strategy to neutralize any threat the dog might pose by non-lethal means. Additionally, although the County had a written policy prohibiting the use of lethal force against an animal unless the animal posed a danger to officers or other persons, the County did not formally train its officers about how to handle encounters with dogs during searches. The officers testified that they would call animal control to help secure a dog when executing a normal warrant but never planned for non-lethal means to secure a dog during execution of a no-knock warrant.

The officers explained that executing a no-knock warrant requires them to move through the entryway (also called the "fatal funnel") as quickly as possible to avoid becoming easy targets for armed occupants. In DeSain's words, the officers "don't have the time" to use non-lethal means during execution of a no-knock warrant when confronted by a dog in the fatal funnel "because our lives are at risk entering that door." J. App'x at 55. Moreover, the officers

explained that any delay in securing the entryway and moving through the house could facilitate the destruction of evidence. They emphasized, however, that shooting a dog was often unnecessary during execution of a no-knock warrant when, for example, an owner is able to restrain the dog or where the dog runs away, lies down, or poses no threat to officer safety.

## DISCUSSION

Federal Rule of Civil Procedure 50 provides that a motion for judgment as a matter of law will be granted only if there was no "legally sufficient evidentiary basis" for the jury to find for the nonmoving party. This is a "particularly heavy burden where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted). Therefore, we may set aside a verdict "only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted). We must "consider the evidence in the light most favorable to the [nonmoving party] and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (internal quotation marks omitted). Although the death of her dog was regrettable, we cannot conclude that the plaintiff has met this heavy burden.

As a number of our sister circuits have already concluded, the unreasonable killing of a companion animal constitutes an unconstitutional "seizure" of personal property under the Fourth Amendment. *See, e.g.*, *Altman v. City of High Point*, 330 F.3d 194, 204-05 (4th Cir.

2003); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *overruled on other grounds by Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002); *Lesher v. Reed*, 12 F.3d 148, 151 (8th Cir. 1994). To determine whether a seizure is unreasonable, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion" and determine whether "the totality of the circumstances justified [the] particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (internal quotation marks omitted). We have long held that the plaintiff has the burden to prove that a seizure was unreasonable. *See Ruggiero v. Krzeminski*, 928 F.2d 558, 562-63 (2d Cir. 1991).

There is no dispute that Deputy Carroll's shooting of the plaintiff's dog was a severe intrusion given the emotional attachment between a dog and an owner. *See San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) (*"Hells Angels"*). On the other hand, ensuring officer safety and preventing the destruction of evidence are particularly significant governmental interests. Additionally, courts have held that, at least in some circumstances, it is reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community. *See, e.g., Altman*, 330 F.3d at 205-06; *Brown*, 269 F.3d at 210-11. The key question, then, is whether a jury could reasonably conclude that the plaintiff had failed to prove that Deputy Carroll's actions were unreasonable under the totality of the circumstances.

A reasonable jury certainly could have found—based on the evidence presented—that no amount of planning or training would have changed the unfortunate outcome in this case. The plaintiff offered no evidence that any non-lethal means of controlling her dog would have

allowed the officers to quickly escape the "fatal funnel" and effectively execute the no-knock warrant. In other words, the jury could have reasonably found that Deputy Carroll would still have needed to shoot the plaintiff's dog even if the officers had developed a non-lethal plan to restrain the dog.

Although the plaintiff's counsel mentioned the possibility of using pepper spray, a taser, or a catch pole, the plaintiff offered no evidence that these non-lethal means would have been effective or that it would have been unreasonable for the officers to decide not to use them. Deputy Carroll testified that he had never heard of pepper spray effectively controlling an aggressive dog, and he also explained that the department did not own tasers at the time. A jury could reasonably conclude that using a catch pole in the middle of the entryway would compromise officer safety and unreasonably delay the search, allowing the occupants to destroy evidence, or worse, arm themselves. The jury could further have reasonably found that an officer in Deputy Carroll's position should not be required to enter a house holding pepper spray or a taser and thereby compromise his ability to defend himself from possible gunfire. Also, unlike scenarios in which a dog might not pose a genuine threat to officer safety, *see, e.g.*, *Erwin v. Cnty. of Manitowoc*, 872 F.2d 1292, 1299-1300 (7th Cir. 1989), there was sufficient evidence here for the jury to find that Deputy Carroll reasonably feared for his safety when the plaintiff's dog aggressively approached him in the entryway. In sum, the jury was entitled to believe the officers' testimony that non-lethal methods would not have been effective in this particular case, and we cannot say that its verdict was wholly without a "sufficient evidentiary basis." Fed. R. Civ. P. 50(a).

We do not believe that the Ninth Circuit's decision in *Hells Angels*—on which the plaintiff bases nearly her entire argument—compels a different result. Although we agree with the Ninth Circuit that the failure to plan adequately for the presence of dogs during a search could contribute to a Fourth Amendment violation under certain circumstances, *see Hells Angels*, 402 F.3d at 976-78, the officers' conduct there was far more unreasonable than the police conduct here. The officers in *Hells Angels* executed normal (*i.e.*, knock and announce) warrants to search two residences where they knew dogs would be present. At one residence, the officers did not encounter the dog until they had already cleared the residence and—for unknown reasons—ventured into the backyard; the dog then charged at an officer, and the officer killed the dog. *Id.* at 968. The other residence was encircled by a tall fence, and three guard dogs were on the opposite side. *Id.* at 969. After an officer poked one dog with his shotgun and the dog did not retreat, the officer shot at the dogs (killing two) so that the police could cut through the fence and safely move toward the residence. *Id.*

In both instances, the officers had ample time to utilize non-lethal means without compromising their safety or the search, especially given that they were not executing no-knock warrants and were not in a "fatal funnel." The officer at the first residence could simply have left the dog outside and conducted the search in complete safety, and the officers at the second residence were separated from the dogs by a fence. If the officers had formulated a better plan for the search, they would probably not have needed to shoot the dogs. In fact, as the Ninth Circuit pointed out, the execution of the warrant at the second residence might have been *better* served by non-lethal means because the gunfire alerted the occupants of police presence and

could have allowed them time to destroy evidence.[1] *Id.* at 976. Under these circumstances, there is little doubt that better planning would have obviated any need to shoot the dogs, but, as explained above, a reasonable jury would not necessarily have been required to reach the same conclusion in this case. At any rate, even on the much stronger facts in *Hells Angels*, the Ninth Circuit simply held that summary judgment on qualified immunity grounds for the defendants was not warranted, and that the case could proceed to trial. It did not hold, as the plaintiff would have us do, that the plaintiffs there were entitled to judgment as a matter of law.

As a cautionary note, however, we do not mean to endorse the defendants' apparent position that the failure to plan for the known presence of a dog is always acceptable when the police are executing a no-knock warrant. We merely decide that under the particular facts of this case, especially given the high burden that a party must meet to successfully challenge a jury verdict, the jury was not unreasonable to conclude that the plaintiff did not meet her burden of proof. There may very well be circumstances under which a plaintiff could prove that lack of an adequate plan rendered the shooting of his or her dog unreasonable even during execution of a no-knock warrant, and we urge the defendants to consider whether more comprehensive training and planning would better serve the public, as well as its officers, in the future.[2]

---

[1] To the extent the Ninth Circuit implied that use of a battering ram might similarly undermine an officer's justification that shooting a dog was necessary to prevent the destruction of evidence by ruining the element of surprise, *see id.* at 976, we do not agree. When, as in this case, entry is achieved upon one thrust of the battering ram, it only provides the occupants with a few seconds of advanced warning and is hardly enough time to allow for the destruction of evidence. The occupants would only have had the chance to destroy evidence in this case if the officers had been delayed by trying to control the dog using non-lethal means.

[2] Deputy Carroll, in particular, has apparently killed two other dogs in the course of executing no-knock search warrants, which indicates that officers in the County encounter these situations more frequently than they would probably prefer and that planning and training—while not always constitutionally required—may be advisable to avoid future tragedies and future litigation.

Finally, we reject the plaintiff's alternative argument that she is entitled to a new trial. A trial judge has considerably more discretion to grant a new trial than to order judgment as a matter of law. *See* Fed. R. Civ. P. 59; *see also Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). The district court may grant a new trial where "the jury has reached a seriously erroneous result . . . or the verdict is a miscarriage of justice." *Manley*, 337 F.3d at 245 (internal quotation marks omitted). However, we typically defer to a trial judge's determination of when a new trial is necessary and, therefore, review the district court's denial of a new trial motion for abuse of discretion. *See Sorlucco v. New York City Police Dep't.*, 971 F.2d 864, 875 (2d Cir. 1992). For the same reasons discussed above, the district court's decision here was not an abuse of discretion.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.