**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENT MAYFIELD and TONYA
MAYFIELD,

     Plaintiffs - Appellees,

v.

JIM BETHARDS, part-time Deputy,

     Defendant - Appellant.

----------------------------------

HARVEY COUNTY SHERIFF'S
DEPARTMENT; T. WALTON, Sheriff;
CARMAN CLARK, Sheriff Deputy;
SCOTT MOTES, Sergeant; TODD
HANCHETT, Undersheriff; GREG NYE,
District Attorney; TIM BOESE, Corporal;
HARVEY COUNTY DISTRICT COURT;
JOHN DOES 1 - 3; JANE DOES 1 - 3,

     Defendants.

No. 15-3074

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:14-CV-01307-JTM-KGG)**
_____

Submitted on the briefs:[*]

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Kent Mayfield, Tonya Mayfield, pro se.

Toby Crouse, Foulston Siefkin, LLP., Overland Park, Kansas, for Jim Bethards, Defendant-Appellant.

———————————————

Before **LUCERO**, **PORFILIO**, and **McHUGH**, Circuit Judges.

———————————————

**McHUGH**, Circuit Judge.

———————————————

Kent and Tonya Mayfield, proceeding pro se, brought this action against Deputy Jim Bethards under 42 U.S.C. § 1983, claiming he violated their Fourth and Fourteenth Amendment rights by killing their pet dog. Deputy Bethards raised a qualified-immunity defense and moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The district court denied his motion and Deputy Bethards appeals. We affirm.

## I. Background

The Mayfields claim Deputies Clark and Bethards violated their Fourth Amendment rights by entering their property without a warrant with the intention of killing their two dogs, firing upon both dogs, and killing one of them.[1] According to the Complaint, the deputies saw the Mayfields' dogs Suka and Majka lying in the front yard of the Mayfields' private residence in Halstead, Kansas, on July 13, 2014.

---

[1] The Mayfields initially also included a claim that the deputies had violated their Fourteenth Amendment rights. But they have abandoned their Fourteenth Amendment challenge in their answer brief to this court, stating "[t]his is not a due process claim" and "the 4th amendment is the only appropriate vehicle for resolving the current unlawful seizure." *See* Aplee. Br. at 13.

2

The deputies exited their vehicle and entered the Mayfields' unfenced front yard to approach the dogs. In the Complaint, the Mayfields allege a witness observed that although neither dog acted aggressively, both officers began firing on the dogs once on the Mayfields' property. Deputy Clark fired on Suka, the Mayfields' brown dog, but missed as she fled to the back of the house. Deputy Bethards shot Majka, the Mayfields' white Malamute Husky, three times, killing her on the front porch.

The deputies then unsuccessfully searched for Suka behind the house, where she had disappeared into a wooded section of the Mayfields' property. The Complaint further alleges that upon returning to the front yard, the deputies first moved Majka's body in an apparent attempt to obscure that she had been shot on the Mayfields' property and then tried to hide her body in a row of trees.

Deputies Clark and Bethards raised a qualified-immunity defense and moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The district court dismissed the Mayfields' Fourth Amendment claim against Deputy Clark on qualified immunity.[2] But the district court denied qualified immunity to Deputy Bethards, finding the Complaint set forth a plausible claim that Deputy Bethards violated the Mayfields' clearly established Fourth Amendment rights by unlawfully seizing Majka when he shot and killed her.

Deputy Bethards filed a timely appeal. We affirm the district court's decision.

---

[2] The district court dismissed the Fourteenth Amendment claims against all Defendants. "Other than the Fourth Amendment claim against Bethards . . . , Plaintiffs fail[ed] to allege facts sufficient to state a plausible claim to relief for any constitutional torts or due process violations." The district court also dismissed the John and Jane Doe Defendants sua sponte.

3

## II. Jurisdiction

The denial of a Rule 12(b)(6) motion to dismiss on qualified-immunity grounds is an appealable final order if it turns on an issue of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("[T]his Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of [28 U.S.C.] § 1291."); *Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013). The district court found the Mayfields had sufficiently alleged a violation of their clearly established rights. Whether a plaintiff has sufficiently "alleged a violation of his clearly established constitutional rights to overcome [the defendant's] defense of qualified immunity is an issue of law reviewable on interlocutory appeal." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). Accordingly, we exercise jurisdiction pursuant to § 1291 to review the district court's order denying Deputy Bethards's qualified immunity defense. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 530 (1985); *Keith*, 707 F.3d at 1187.

## III. Standard of Review and Relevant Law

We review the denial of a motion to dismiss "de novo, applying the same standards as the district court." *Keith*, 707 F.3d at 1187. To survive a motion to dismiss, a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (internal quotation marks omitted). A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable. *Id*. In reviewing a motion to dismiss, we accept the facts alleged in the complaint as true and view them

4

in the light most favorable to the plaintiff. *See Brown*, 662 F.3d at 1162. And because the Mayfields appear pro se, we liberally construe their pleadings. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).

Qualified immunity protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation. *See id*. The court may address these requirements in any order. *Wilson*, 715 F.3d at 852.

## IV. Analysis

### A. The complaint states a plausible violation of the Mayfields' Fourth Amendment rights.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Deputy Bethards argues the Complaint fails to state a plausible Fourth Amendment claim because dogs are not "effects" subject to Fourth Amendment protection and, regardless, killing Majka was reasonable under the circumstances as a matter of law. We disagree.

5

Although the Fourth Amendment uses the word "effects," the Supreme Court has long equated that term with personal property.[3] *See United States v. Place*, 462 U.S. 696, 700–01 (1983) ("In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized."); *see also Illinois v. McArthur*, 531 U.S 326, 330 (2001) (same). And Kansas has recognized for at least as long that dogs are their owners' personal property. *See* Kan. Stat. Ann. § 79-1301 ("A dog shall be considered as personal property and have all the rights and privileges and be subject to like lawful restraints as other livestock."); *State v. Fenske*, 61 P.2d 1368, 1369 (Kan. 1936) (upholding larceny conviction for stealing a dog and stating "[w]e have no hesitancy in saying a dog is personal property"). Thus, it is unlawful to seize a dog absent a warrant or circumstances justifying an exception to the warrant requirement. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 358 & n.21 (1977) (discussing exceptions to warrant requirement).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Killing a dog meaningfully and permanently interferes

---

[3] For a thorough discussion of how the term "effects" came to be included in the Fourth Amendment text and the meaning of the word at the time, see *Altman v. City of High Point*, 330 F.3d 194, 201 (4th Cir. 2003) (concluding the term "referred only to personal property, and particularly to goods or moveables"); Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 Yale L.J. 946, 984–85 (2016).

with the owner's possessory interest. It therefore constitutes a violation of the owner's Fourth Amendment rights absent a warrant or some exception to the warrant requirement.

Deputy Bethards argues that, even if the Fourth Amendment applies, killing Majka was reasonable because he thought she had attacked livestock and he believed Kansas law allows anyone to kill a dog reported to have done so. But Deputy Bethards's explanation for killing Majka is found in his police report, not the Mayfields' Complaint. At this stage of the proceedings, our review is limited to the Complaint and any documents it incorporates. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).[4]

Although the Complaint does not incorporate Deputy Bethards's police report, it incorporates a letter from the Mayfields to Sheriff Walton in which they dispute as a case of "mistaken identity" an accusation that Majka had mauled a neighbor's livestock a year before Deputy Bethards shot her. Specifically, the attached letter alleges the livestock owner shot the offending white husky during the previous incident, and the dog—a different white dog than Majka—had to be "put down" as a result of the shotgun wounds. In addition, the Complaint alleges that neither of the Mayfields' dogs was acting aggressively toward the officers when Deputy Bethards killed Majka.

---

[4] The only document the Complaint specifically incorporates is a letter from the Mayfields to the "Chief Sheriff" complaining of Deputy Bethards's and other deputies' actions and accusing them of lying in their police reports. The Mayfields attached the police report to their Opposition to the Harvey County District Court's Motion to Dismiss, which the district court granted separately.

7

We agree with the district court that these allegations state a plausible claim for violation of the Mayfields' Fourth Amendment rights, even considering the Kansas statute relied on by Deputy Bethards. Section 47-646 of the Kansas Statutes allows "any person at any time to kill any dog which may be found injuring or attempting to injure any livestock." Kan. Stat. Ann. § 47-646. According to Deputy Bethards, the Kansas Supreme Court in *McDonald v. Bauman*, 433 P.2d 437 (Kan. 1967), interpreted this statute to permit a person not only to kill an offending dog caught in the act of injuring or attempting to injure livestock, but also to pursue and kill the dog after it has returned to its owner's land. But that case cannot be read as broadly as Deputy Bethards suggests.

In *McDonald*, the defendant shot a dog he caught attacking his hogs, chased the dog to its home, and then shot the dog several more times. *Id.* at 439. The dog survived and its owner sued to recover the veterinarian expenses incurred in treating the gunshot wounds. *Id.* at 439–40. After the jury returned a verdict in favor of the defendant, the dog owner appealed. *Id.* at 440–41. The Kansas Supreme Court affirmed, holding that section 47-646 allows a person to shoot a trespassing dog "which he finds on his premises injuring or attempting to injure" livestock "either at the time the dog is found in the act . . . or within a reasonable time thereafter," which includes "the right within such reasonable time, if necessary, to pursue such dog after it has left his premises, and to shoot . . . such dog off his premises."[5] *Id.* at 442. In

---

[5] Significantly, neither section 47-646 nor *McDonald* addresses the killing of a dog on its owner's property by either a private third party or a police officer acting in

reaching that conclusion, the Kansas Supreme Court identified two prerequisites that make application of the statute a fact-intensive inquiry. First, *McDonald* places the burden of proof on a defendant seeking to rely on the statute "to show by a preponderance of the evidence that he was justified in shooting the dog." *Id.* at 443. Second, where the aggrieved livestock owner pursues the dog onto its owner's property and shoots it, the defendant must establish that he entered the dog owner's land "with authority, or under such circumstances that authority to enter such other's land may be implied." *Id.* And the Kansas Supreme Court further explained that whether a livestock owner in hot pursuit has entered the dog owner's property with consent or implied consent is a question for the jury. *Id.* Thus, *McDonald* supports rather than refutes the district court's denial of Deputy Bethards's motion to dismiss.[6]

In summary, the Complaint alleges facts that if true could support a finding that Deputy Bethards unconstitutionally seized—indeed destroyed—the Mayfields'

---

his official capacity in response to an accusation by a livestock owner about an attack the third party or police officer did not witness.

[6] Deputy Bethards's reliance on *Clark v. City of Draper*, 168 F.3d 1185 (10th Cir. 1999), is similarly misplaced. In *Clark*, the owner of two foxes that were seized and destroyed pursuant to state law to determine whether a child had been exposed to rabies, sued city officials under § 1983 for alleged violations of due process. *Id.* at 1187. In affirming summary judgment in favor of the City and its officials, a panel of this court noted that both the U.S. Supreme Court and the Utah Territorial Supreme Court had held that "property in domesticated canines is subject to the state's police power for the protection of its citizens." *Id.* at 1188 (citing *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 700–04 (1897), and *Jenkins v. Ballantyne*, 30 P. 760, 760 (Utah 1892)). But *Clark* is easily distinguished from the Mayfields' case because the public officials seized the foxes pursuant to a court order (and thus the *Clark* Court specifically held the case did not implicate the Fourth Amendment) and the animals were destroyed only after an evidentiary hearing. *Id.* at 1187, 1189 n.8.

9

personal property. And although Deputy Bethards could present evidence that might succeed at summary judgment or trial, at the motion-to-dismiss stage our review is limited to the sufficiency of the allegations in the Complaint. Accepting those allegations as true and viewing them and all reasonable inferences from those facts in favor of the Mayfields, *see Diversey*, 738 F.3d at 1199, we can infer that killing Majka was not a reasonable seizure. The complaint therefore states a plausible Fourth Amendment claim.

### B. It was clearly established that pet dogs are subject to Fourth Amendment protection.

Deputy Bethards next argues that, even if dogs are subject to Fourth Amendment protection, the law was not clearly established because there was no Supreme Court or Tenth Circuit case on point. Again, we disagree.

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Pauly v. White*, 814 F.3d 1060, 1074 (10th Cir. 2016) (internal quotation marks omitted). This generally requires a Supreme Court or Tenth Circuit decision on point or a weight of authority from other courts. *See Thomas*, 765 F.3d at 1194. The question is not whether there is a prior case with precisely the same facts, but "whether the law put officials on fair notice that the described conduct was unconstitutional." *Pauly*, 814 F.3d at 1075 (internal quotation marks omitted). And we have cautioned that defining a right too narrowly risks making recovery against a public official virtually impossible because only "those rare cases in which a precedential case existed which was 'on all fours'

10

factually with the case at bar" would abrogate qualified immunity. *Melton v. City of Okla. City*, 879 F.2d 706, 729 n.37 (10th Cir. 1989) (internal quotation marks omitted), *modified in part on other grounds on reh'g*, 928 F.2d 920 (10th Cir. 1991) (en banc).

Nevertheless, Deputy Bethards contends the general rule prohibiting the warrantless seizure of personal property lacks the necessary specificity to provide adequate notice that his conduct violated the Mayfields' constitutional rights. But well before Deputy Bethards killed Majka, this court had analyzed seizures of cattle and horses under the Fourth Amendment. *See Campbell v. City of Spencer*, 682 F.3d 1278, 1280, 1285 (10th Cir. 2012) (horses); *Stanko v. Maher*, 419 F.3d 1107, 1112-15 (10th Cir. 2005) (cattle); *DiCesare v. Stuart*, 12 F.3d 973, 977–78 (10th Cir. 1993) (horses).[7] And the Kansas Court of Appeals had upheld an order suppressing evidence in a criminal prosecution for animal cruelty because the search of the defendant's property and seizure of her dogs "did not comport with the requirements of the Fourth Amendment." *State v. Marsh*, 823 P.2d 823, 829–30 (Kan. Ct. App. 1991). These decisions clearly established that animals, including dogs, constitute personal property protected by the Fourth Amendment.

---

[7] Although the decision is unpublished, this circuit had also applied Fourth Amendment analysis to the warrantless seizure of dogs prior to Deputy Bethards's conduct here. *See Bewley v. City of Duncan*, Nos. 97-6274, 97-6321, 1998 WL 314382, at *5 (10th Cir. June 4, 1998) (unpublished) (holding exigent circumstances existed that made warrantless search for and shooting of dog reasonable under the Fourth Amendment).

11

But even assuming more specificity is needed, the clear weight of authority from other jurisdictions provided Deputy Bethards adequate notice that the conduct here implicated the Mayfields' Fourth Amendment rights. *See Thomas*, 765 F.3d at 1194 (stating that a right is clearly established "if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains" (internal quotation marks omitted)). Indeed, seven federal circuits had addressed the issue prior to Detective Bethards's conduct, each holding that killing a pet dog is a Fourth Amendment seizure. *See Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("Every circuit that has considered the issue has held that the killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment."); *see also Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d. Cir. 2013); *Maldonado v. Fontanes*, 568 F.3d 263, 270–71 (1st Cir. 2009); *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005); *Altman v. City of High Point*, 330 F.3d 194, 203, 205 (4th Cir. 2003); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001).

We therefore hold that when Deputy Bethards seized the Mayfields' personal property by killing their pet dog Majka in 2014, it was clear his actions would violate the Fourth Amendment absent a warrant "particularly describing the . . . things to be seized," U.S. Const. amend. IV, or circumstances justifying an exception to the warrant requirement, *see G.M. Leasing Corp.*, 429 U.S. at 358 & n.21 (discussing exceptions to warrant requirement). For the reasons previously explained, the

12

circumstances alleged in the Complaint do not establish an exception to the warrant requirement as a matter of law. Accordingly, the Complaint plausibly states a claim that survives a qualified immunity defense.

## IV. Conclusion

The Mayfields' Complaint asserts facts sufficient to show a violation of their clearly established Fourth Amendment rights. We therefore affirm the district court's order denying Deputy Bethards's motion to dismiss.